**BETHLEHEM STEEL COMPANY, a corporation, Plaintiff,**

v.

**CITY OF CHICAGO, a municipal corporation, Defendant.**

No. 64 C 181.

United States District Court
N. D. Illinois, E. D.

Oct. 22, 1964.

Stevenson, Conaghan, Hackert, Rooks & Pitts, Chicago, Ill., for plaintiff.

John C. Melaniphy, Chicago, Ill., for defendant.

ROBSON, District Judge.

Defendant has moved for summary judgment and plaintiff has filed a countermotion for the same relief. Plaintiff has also moved to strike portions of the defendant's answer, as amended. The suit involves the parties' rights and liabilities under a written construction contract of December 21, 1961, governing plaintiff's furnishing and erecting for $1,734,200 the steel work for a section of the South Route Superhighway known as Section S-2424.3-2HF.

The critical provision of the contract here involved is that which provides for $1,000 "liquidated damages" for each day of delay. The work was originally to have been completed on or before July 29, 1962, but that date was extended by the City to September 20, 1962. The work was actually completed November 21, 1962—52 days late—giving rise to the City's claim of the right to deduct $52,000 from the contract price.

The court concludes that there is no genuine issue of fact, and that the defendant's motion for summary judgment should be granted as to the $52,000 item. The plaintiff's countermotion for summary judgment should be denied as well as its motion to strike portions of the defendant's answer, as amended.

Plaintiff raises the further issue of the right to five per cent interest on $98,-464.69, the remainder of the balance owed it, from February 7, 1963, or, in the alternative, from January 29, 1964, from which latter date (the time this suit was instituted) it also seeks interest on the $52,000 item.

Pursuant to the court's direction, defendant prepared and filed on July 7, 1964, its proposed stipulation of facts, which plaintiff has refused to sign. However, as the court reviews the proposed stipulation it concludes that it is founded on unchallenged documentary proof.

The work which Bethlehem undertook was the erection in Chicago of structural steel for a 22-span steel stringer elevated highway structure, approximately 1,815 feet long, to carry the South Route Superhighway from South Canal Street to the South Branch of the Chicago River. Bethlehem's work was preceded and followed by the work of other contractors on the same section.

The "Proposal and Acceptance" in the instructions to bidders required the bidders to " * * * complete * * * within the specified time the work required. * * * " Time was expressly stated to be the essence of the contract and specified provisions were made for delivery of the steel within 105 days thereafter, or a total of 195 days after commencement of work, which was to be not later than 15 days from notification. The successful bidder was to submit to the Commissioner of Public Works a "Time Schedule" for his work and if "less than the amount * * * specified to be completed" were accomplished "the City may declare this contract forfeited. * * * " The work had to be completed irrespective of weather conditions.

The all important provision specifying $1,000 a day "liquidated damages" for delay is as follows:

"The work under this contract covers a very important section of the South Route Superhighway, and any delay in the completion of this work will materially delay the completion of and opening of the South Route Superhighway thereby causing great inconvenience to the public, added cost of engineering and supervision, maintenance of detours, and other tangible and intangible losses. Therefore, if any work shall remain uncompleted after the time specified in the Contract Documents for the completion of the work or after any authorized extension of such stipulated time, the Contractor shall pay to the City the sum listed in the following schedule for each and every day that such work remains uncompleted, and such moneys shall be paid as liquidated damages, not a penalty, to partially cover losses and expenses to the City.

"Amount of Liquidated Damages per Day * * *. $1,000.00.

"The City shall recover said liquidated damages by deducting the amount thereof out of any moneys due or that may become due the Contractor. * * * "

Provision was made to cover delay in a contractor's starting due to preceding contractor's delay. Unavoidable delays by the contractor were also covered, and extensions therefor accordingly granted.

There was delay in the preceding contractor's work, and Bethlehem was advised that certain parts of the work would be ready to receive the structural steel by May 10, 1962. Bethlehem noted the day and asked a 32-calendar day extension of its own completion date, and in a letter of June 2, 1962, requested instead a 35-day extension; still later a 52-day extension and then a 69-day extension. In reply to the last letter, the Chief Engineer of the City wrote Bethlehem on July 3, 1962:

"This will acknowledge receipt of your letter dated June 29, 1962 in which you claim an additional extension of time of seventeen (17) calendar days making a total of sixty-nine (69) days.

"Our records show that *due to your own delay* in fabrication you were unable to deliver the steel for erection as scheduled. Had the piers in question been completed you still were unable to supply the structural steel for erection. * * *

"We wish to advise you at this time that the full length of time claimed as a delay will not be allowed as most of your delay has been

caused within your own organization and not by our sub-structure contractor." (Italics supplied.)

The contractor whose work depended on Bethlehem's wrote on July 13, 1962, to the City's Chief Engineer with reference to Bethlehem's delay:

"We are greatly alarmed by the lack of progress on the erection of structural steel. We have started framing for deck slabs in Spans 2, 3, 4 and 5, but it appears that we will very shortly run out of space to work to keep our deck slab pouring operation continuous. Since Bethlehem Steel Company is not our subcontractor on this steel erection, we are turning to you for assistance in expediting erection to enable us to proceed with docks and complete them. * * *"

The same contractor wrote again on July 20, 1962, in regard to Bethlehem's delay:

" * * * [I]t will be noted that steel erection is pushed back over one month, which indicates their work will be two months behind their contract completion date of July 29, 1962.

"This structural steel delay, over which we have absolutely no control, will delay final completion of the job, unless some measures are taken to expedite the framing and placing of deck concrete. * * *

"The additional costs should be determined within the next ten days."

Still further complaint was made by the same contractor on July 27, 1962, when it wrote:

"*We have not been able to complete our deck framing * * * because of Bethlehem Steel Company's work* that still has to be completed in these piers. Beyond this point none of the structural steel is ready for deck framing. *Leaving gaps in our deck framing,* which we have had to do at Piers 7 and 8, *causes inter-*

*ruption of production, with consequent time loss, very considerable additional expense in organizational disruption, and greater hazard to our personnel in working 'islands,' rather than continuous deck.*

"We are very much concerned with the rate of progress of the steel erection. *We are now forced to start laying off carpenters because of lack of area* in which to work. * * *

"At present it appears that we will be forced to cease our concreting operations by the end of next week. This will be done with the greatest reluctance, this being the most favorable season of the year for concrete work." (Italics supplied.)

The City's chief engineer wrote Bethlehem on July 25, 1962, a notice of intention to apply the liquidated damage provision of the contract as follows:

"Our records show that on July 15, 1962 your contract was only approximately 31.0% complete. At this date, 92.8% of the time allowed to complete this contract had elapsed and you should have been 98.0% complete.

"In your letters of April 27, May 10, 15, and 25, June 1, 6, 12, 18 and 29, you requested extensions of time due to alleged delays by the O'Neil Construction Company in completing their piers. An analysis of your contract shows that if the piers in question had been complete *you did not have the steel fabricated and delivered for erection. Any delay on your contract is caused by your own organization* and not by the O'Neil Construction Company. Therefore none of your previous requests will be considered for any extensions of time." (Italics supplied.)

The City granted Bethlehem an extension of 63 days, from the original set completion date of July 29, which would bring it to September 20. Actual completion was November 21, or 52 days later, which delay the City assessed at

$1,000, or a total of $52,000 for liquidated damages. Having granted the 63-day extension the City made no claim to liquidated damages for that delay.

Bethlehem contends it is entitled to the $52,000 on the ground that the City actually sustained *no* damages in that the Superhighway was *timely completed.* If the contract were construed otherwise the provision would be a penalty.

Defendant's answer points out that

" * * * [Where] * * * a contractor for construction of public work on a highway * * * is one of several contracts executed for the purpose of carrying out the project, and the planned coordination of all work under the various contracts then make it difficult if not impossible, to determine what actual damage would result if delays are encountered in construction under the contract, the circumstances are appropriate for the inclusion of a liquidated damage provision in such construction contract. * * * "

And also that

" * * * [A] liquidated damages provision in a contract for construction is to be judged as of the time of making the contract, and the fact that actual damages suffered are shown to be greater or less than the liquidated damages fixed by the parties is not determinative of the unreasonableness of the stipulated damages nor fatal to their validity."

The City further maintains that no interest is due on the $98,464.69 owed by it in that the contract is an entirety and Bethlehem is not entitled to the sum until it executes the final papers, which it refuses to do because of the dispute over the $52,000 withheld for the delay.

A certificate executed by the General Manager of Sales of Bethlehem, dated October 18, 1963, stated "that the following is a true and correct statement of the contract amount up to and including the last day of the period covered by this estimate * * * $98,464.70." Defendant points out this *does not claim the*

*$52,000 or interest* on the $98,464.70, and therefore estops plaintiff from claiming either of those two items.

Defendant assails plaintiff's June 26, 1964, motion to strike paragraphs 1 and 2 of the original answer, as amended, because it was tardily presented some four and one-half months after the answer was amended on February 10, 1964. It also objects thereto because when the motion to amend the answer was filed, *counsel for plaintiff stated he had no objection thereto.* Further, plaintiff waived the right to object to the answer when it filed its motion for summary judgment, and finally, by its failure to assert said motion at the pre-trial conferences. The defendant also cites the well-established rule of liberality in the allowance of amendments. It also maintains that the motion to strike is insufficient because it does not state with particularity the bases for the insufficiency. Further, a motion to strike is not favored, and is a drastic remedy to be sparingly used. (City of Chicago v. Allen Bradley Company, 32 F.R.D. 448 (D.C. Ill.1963); Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819 (6th Cir. 1963))

■ The decisions involving contract provisions for liquidated damages or penalties are legion. The consensus seems to be in favor of upholding and enforcing such provisions, even absent proof of any actual damages, where it was *reasonable at the time of making the contract* to so contract. Thus it was said in Rex Trailer Co. v. United States, 350 U.S. 148, at page 151, 76 S.Ct. 219, at page 221, 100 L.Ed. 149 (1956):

" * * * Liquidated damages are a well-known remedy, and in fact Congress has utilized this form of recovery in numerous situations. In all building contracts, for example, Congress has required the insertion of a liquidated-damage clause which 'shall be conclusive and binding upon all parties' *without proof of 'actual or specific damages sustained * * *.' "* (Italics supplied.)

Again, in the same case, at page 153, 76 S.Ct. at page 222, the Supreme Court said:

"* * * As this Court recognized in Priebe & Sons v. United States, 332 U.S. 407, 411–412, 68 S. Ct. 123, 126, 92 L.Ed. 32, liquidated damages 'serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. * * *' *And the fact that no damages are shown is not fatal."*

* * * * * *

"The damages resulting from this injury may be difficult or impossible to ascertain * * *." (Italics supplied.)

In Wise v. United States, 249 U.S. 361, 365, 39 S.Ct. 303, 304–305, 63 L.Ed. 647, the Supreme Court said:

"* * * [T]he result of the modern decisions was determined to be that * * * courts will endeavor, by a construction of the agreement which the parties have made, to ascertain what their intention was when they inserted such a stipulation for payment, of a designated sum or upon a designated basis, for a breach of a covenant of their contract * * *. When that intention is clearly ascertainable from the writing, effect will be given to the provision, as freely as to any other, where the damages are uncertain in nature or amount or are difficult of ascertainment or where the amount stipulated for is not so extravagant, or disproportionate to the amount of property loss, as to show that compensation was not the object aimed at or as to imply fraud, mistake, circumvention or oppression. *There is no sound reason why persons competent and free to contract may not agree upon this subject as fully as upon any other, or why their agreement, when fairly and understandingly entered into with a view to just compensation for* the anticipated loss, should not be enforced.

"* * * *The later rule, however, is to look with candor, if not with favor, upon such provisions in contracts when deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights, as promoting prompt performance of contracts and because adjusting in advance, and amicably, matters the settlement of which through courts would often involve difficulty, uncertainty, delay and expense. * * *

"* * * It is obvious that the extent of the loss which would result to the government from delay in performance must be uncertain and difficult to determine and it is clear that the amount stipulated for is not excessive * * *.*

"The parties * * * were much more competent to justly determine what the amount of damage would be, an amount necessarily largely conjectural and resting in estimate, than a court or jury would be, directed to a conclusion, as either must be, after the event, by views and testimony derived from witnesses who would be unusual to a degree if their conclusions were not, in a measure, colored and partisan." (Italics supplied.)

In Priebe & Sons v. United States, 332 U.S. 407, at page 412, 68 S.Ct. 123, at page 126, the court said:

"* * * We have no doubt of the validity of the provision for 'liquidated damages'."

Long ago, the Second Circuit held similarly in Wood et al. v. Niagara Falls Paper Co., 121 F. 818 (1903).

In Weiss v. United States Fidelity & Guaranty Co., 300 Ill. 11, at pages 16–17, 132 N.E. 749, at page 751 (1921), the Illinois Supreme Court held:

"Where a contract provides for liquidated damages at so much per day for delay in the performance of

a building contract beyond the time fixed for completing the building, as this contract does, it is not necessary in an action for breach to allege actual damages from such delay, as plaintiff is entitled to rely on the contract to show that damages at the rate stipulated will result from the breach."

\* \* \* \* \* \*

" \* \* \* Where the damages cannot be calculated in such a contract by market value nor by any precise pecuniary standard, or where, from the peculiar circumstances which the contract contemplates, there must be other uncertainties affecting the practical ascertainment of the amount of actual loss, the law favors any fair adjustment of damages by stipulation. If the contract does not afford any data from which the actual damages can be calculated, this circumstance affords a reason for regarding the sum designated in it as liquidated damages."

In the older case of United States v. Bethlehem Steel Co., 205 U.S. 105, at page 119, 27 S.Ct. 450, at page 455, 51 L.Ed. 731 (1906), the Supreme Court said:

" \* \* \* [T]he courts \* \* \* have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and *without proof of the damages actually sustained.*" (Italics supplied.)

A complete study of this problem appears in the article, Liquidated Damages in Illinois, 31 Illinois Law Review 879, 880. It is there said:

"The validity of liquidated damage clauses is traditionally determined by the application of three primary tests, which may be referred to as the intent test, the reasonableness test, and the uncertainty test.

" \* \* \* [T]he intent and reasonableness tests must be applied with reference to the time when the contract was made, and before the breach occurred."

Especially pertinent is the observation made in the above cited article, at pages 885, 887:

"*In principle it can make no difference whether or not actual loss followed from the breach for which stipulated damages are sought, because the validity of the stipulation must be judged as of the time when the contract was entered into.* \* \* \* "

\* \* \* \* \* \*

"Considered as a whole, *the Illinois cases support the view that the stipulation will be upheld although no loss be shown, if a loss in the amount stipulated, and legally compensable, was to have been anticipated.*" (Italics supplied.)

Similar holdings are: Hennessy v. Metzger, 152 Ill. 505, 38 N.E. 1058, and Burnett v. Nolen, 336 Ill.App. 376, 84 N.E. 2d 155.

The Illinois Uniform Commercial Code, Ill.Rev.Stat. 1961, Ch. 26, which became effective after this contract, similarly provides:

"Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

▆ Viewing this contract from the time it was entered into, it is evident that the provision for $1,000 for a day's delay was a reasonable provision and that it was the parties' intent that that be the sum recoverable for each day's delay in order to forestall legal proceedings for a determination of the precise

amount of damages. Further, as the court reads the correspondence, it is evident that in some measure at least, Bethlehem's delay gave rise to real problems to the City in the expeditious consummation of the work, because of complaints of hindrance to the prosecution of other contractors' work, with necessary laying off of employees, greater danger of accidents, etcetera.

Bethlehem argues that the fact that the route was timely opened *ipso facto* proves there could be no damage. However, it is surmisable that if Bethlehem were the only contractor who delayed, this route could have been opened far earlier due to the evident expedition of the other contractors, with consequent beneficial earlier use of the route.

█ Since the court does not agree with plaintiff's contention that the City is wrongfully withholding $52,000, it follows that the City is not required to pay interest on it, or on the $98,464.69, which it has refused to pay absent the "contract payment voucher" and "final estimate" together with waivers from any subcontractors or materialmen, required by the contract, Section 4, Special Provisions I, C–6, and absent prior demand.

Plaintiff's motion to strike the "Second Defense" as an argumentative conclusion of law and not simple and concise, has some justification, at least as to lack of conciseness, but it is not so derelict as to impel a granting of the motion as to it. It does contain material more properly found in a brief but plaintiff can deem itself helped by clarification of defendant's position rather than prejudiced by its inclusion. The motion is also made to strike the "Third Defense" with its supporting exhibits, incorporating by reference appended exhibits of correspondence between the parties to support the defense of defendant. The court does not agree that these exhibits bear no relevance to any issue of fact raised by the pleadings but believes they are highly enlightening in resolving those issues. There is no challenge in the motion to strike of the authenticity or verity of the documents appended as exhibits.

The court concludes that that part of plaintiff's countermotion for summary judgment seeking recovery of the sum of $98,464.69 should be granted and that part seeking $52,000, interest on either or both such sums, and costs, should be denied; that that part of defendant's motion for summary judgment seeking a dismissal of plaintiff's cause as to the $52,000, interest, and costs, should be granted. Plaintiff's motion to strike portions of defendant's answer is denied. The City is directed to submit a final judgment in accordance with this conclusion, within ten days, furnishing a copy thereof to the plaintiff.