Mark F. WEISER, Plaintiff-Respondent,

v.

KANSAS CITY, Missouri, Defendant-Appellant.

No. 25639.

Missouri Court of Appeals,
Kansas City District.

May 8, 1972.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 5, 1972.

Application to Transfer Denied July 17, 1972.

Aaron A. Wilson, City Counselor, Charles A. Lewis, Associate City Counselor, Kansas City, for appellant.

Hollis H. Hanover, Thomas J. Conway, Kansas City, Popham, Popham, Conway,

Sweeny & Fremont, Kansas City, of counsel, for respondent.

PER CURIAM.

The jury verdict in the court below awarded damages to plaintiff for injuries suffered by him during the course of his employment for the defendant City. The City appeals from the overruling of its motion to set aside that verdict and to enter judgment for defendant.

At the time of the injuries, plaintiff was the head of the Collection Division of the City's Water Department. His place of work was the Collection Division office on the west side of the first floor of the City Hall. This office was used exclusively by the Water Department.

Within that office, there was a vault consisting of two rooms. The main room measured approximately 24 feet in an east-west direction by 14 feet in a north and south direction. The only entry to the vault from the general office was through a door on the west side of the vault toward its north end. The smaller room inside the vault was located south of the larger room. The only means of entry into this smaller room on the south side of the vault, was through a doorway between the two rooms.

There were ledger racks on both the north and south walls of the larger room within the vault. In front of those racks were rubber runners or mats, two to three feet wide, which ran in an east-west direction. More than a year before plaintiff's accident, the old mats had become worn out, and new rubber material was delivered for replacement. This material consisted of a big roll of rubber runner, which the office girls in plaintiff's office cut to size and laid on the floor.

Soon after the new mats were so laid, employees in the office complained to plaintiff that the mats would bubble or hump up, and plaintiff in turn made complaint to the Building Department. However, no correction was made, and the office staff in the Collection Division had to straighten out the mats daily. This consisted of pulling on them, walking on them and pushing them with their feet to get the ripples out. The employees would start out each morning by straightening out the mats in the manner stated. Nevertheless, the evidence was that ripples, bubbles or humps would form during the course of the day and that employees using the vault did, on occasion, stumble on the mats because of these irregularities.

On the day in question, plaintiff received an emergency request for information concerning a commercial water bill. Plaintiff enlisted the assistance of Mr. Leslie and Mrs. Bigsby, employees on his staff, to go into the vault to search for the requested information. Mrs. Bigsby began searching records in the large north room of the vault, while plaintiff and Leslie proceeded into the small south room to examine records there. While plaintiff and Leslie were in the smaller room, Mrs. Bigsby called out that she had found the information. Plaintiff then left the smaller room and walked into the larger room, through the doorway which separated the two parts of the vault. Leslie was following immediately after the plaintiff, when he tripped and pitched forward in a northerly direction, and plaintiff was struck in the middle of the back by the top of Leslie's head.

In going from the large room to the smaller room within the vault, plaintiff and Leslie necessarily had to cross the rubber runner, which ran the full length of the larger room in an east-west direction. Neither of them noticed the condition of the mat at the time when they crossed from the large room to the small room. Of course, they both had to cross the runner again when they returned from the smaller room to the larger room. Plaintiff had had no difficulty in negotiating the return trip, and he did not notice the condition of the mat at that time. Leslie, however, had a physical handicap, multiple sclerosis, which caused him difficulty in stepping over anything high. Immediately

after his fall, and while he was lying on the floor, he exclaimed about "that damned rug". Immediately after the fall, there was a wrinkle about two inches high in the rubber mat or rug, and Leslie's foot was an inch or two from that wrinkle.

On this appeal, the City makes the following arguments: (1) that any liability on its part is barred by the doctrine of governmental immunity; (2) that there was no substantive evidence to prove that the hump in the mat was the proximate cause of the accident; (3) that plaintiff did not allege or prove that he did not know of the dangerous condition; and (4) that the proximate cause of the accident was the negligence of plaintiff's fellow servant, Leslie.

I

■ In support of its argument based on the doctrine of governmental immunity, the City relies upon a stipulation between the parties to the effect that the City Hall, in which the accident occurred, was the seat of government for the municipality of Kansas City, and the City proceeds to argue that the maintenance of the City Hall, therefore, must be immune as part of the City's governmental function. On the other hand, plaintiff relies upon a stipulation between the parties to the effect that the Water Department, in whose office plaintiff was employed and suffered his injuries, constitutes a proprietary function, and plaintiff's argument is that the maintenance of that portion of the City Hall constitutes non-governmental, non-immune, activity.

The decisions of the Missouri courts support plaintiff's contention. In Lober v. Kansas City (Mo.Sup.), 74 S.W.2d 815, l. c. 821, the question involved was whether the City was immune from liability with respect to an allegedly defective fire hydrant, which had caused flooding. The court held that the answer depended upon the particular function or use which was being made of the hydrant, since the hydrant was used for multiple purposes, some of which were governmental and some of which were proprietary. In this connection, the opinion holds:

"Where the city owns and operates the waterworks system and uses the same indiscriminately in the performance of both its governmental functions and its proprietary or private functions, it is necessary in a particular case to distinguish as to which is the primary use and which the incidental use; and it may be necessary and proper to inquire, in reference to the particular negligent injury, as to whether the particular part or appliance of a waterworks system was devoted solely at the time or generally to a governmental function or to a corporate function, or whether the particular act in question was called for or caused by a governmental or a proprietary duty."

The same distinction between the use of the same facility in dual capacities was again pointed out and was given effect in Langhammer v. City of Mexico (Mo.Sup.) 327 S.W.2d 831, l. c. 834–835, where the court affirmed a recovery by plaintiff by reason of injuries suffered in a fall at a city dump, over a claimed defense of governmental immunity. In connection with that issue, the court held:

"The city's argument and its fear of chaos and confusion with respect to its liability overlooks the fact that it may often perform dual functions or act in overlapping capacities, for one of which there may be immunity from liability while if injury results from the other there may be no immunity."

Similarly, in Burke v. City of St. Louis (Mo.Sup.), 349 S.W.2d 930, l. c. 932, the court held that the City's liability for negligence in the maintenance of a Soldier's Memorial Building depends upon the use being made of the building, which determines whether such function is governmental or proprietary.

In the present case, the nature of the use being made of the premises where the accident occurred is completely free from doubt. The evidence is uncontradicted to the effect that the entire west one-half of the first floor of the City Hall was used exclusively for Water Department activities; and it is expressly stipulated between the parties that the operation of the Water Department is a proprietary function of the City. These facts serve to distinguish the cases upon which the City relies. Under these undisputed facts, the City is not immune from liability under the principles established by the cases cited above.

## II

In support of its contention that there was not sufficient proof that the hump in the mat caused the accident here, the City relies upon the authority of Willoughby v. Safeway Stores, Inc. (Mo.App.), 397 S.W. 2d 748. In the Willoughby case, the plaintiff fell in the defendant's store on a floor mat which had been set out because of inclement weather. The plaintiff did not see anything out of the ordinary with respect to the mat prior to her fall, but she testified that after she fell and was getting up, she saw a one inch high wrinkle in the mat. Under those bare facts, the court in the Willoughby case, held that it was purely speculation and surmise as to whether the wrinkle existed prior to the accident, or whether it had been caused by the accident; and the court held, under those circumstances, that plaintiff had failed to make a submissible case.

The facts in the present case are altogether different. Here the evidence shows a long-continued situation where humps and bubbles in the rubber matting had occurred daily, despite regular efforts by the employees in the office to straighten out the mats. Furthermore, the evidence was that the worst of the humps were formed in the strip which ran along the south side of the bigger room inside the vault, and directly in the doorway between the two rooms inside the vault. This is precisely the location at which Leslie tripped and fell. Moreover, this is the place where other employees had, in the past, stumbled. Still further, a similar such hump was observed by the witnesses in the matting within an inch or two of Leslie's foot, immediately following the fall and while he was still lying on the floor.

██ On this appeal from a jury-tried case, the evidence is to be considered in the light most favorable to the plaintiff, and he is to be given the benefit of all favorable inferences which reasonably may be drawn therefrom. So viewed, there is substantial evidence to support the jury's finding that the hump in the mat was the proximate cause of plaintiff's injuries. We observe in passing, that this rule governing the scope of appellate review was recognized by the court in the Willoughby case, but was held not applicable there, because the Willoughby case was court tried, without a jury.

## III

In support of its contentions that plaintiff did not allege and prove that he was without knowledge of the defective condition of the rubber mat, the City places its sole reliance upon the decision in Piepmeyer v. Johnson (Mo.Supp.), 452 S.W.2d 97. That case is distinguishable. The Piepmeyer case involved a fall by an employee on an eroded portion of the employer's driveway. There was no necessity for the plaintiff-employee to travel over the eroded portion claimed to be defective, and the court observed that there was plenty of room on the driveway where she could have gone around the questioned area. In contrast, plaintiff and Leslie in our case had no way to get to the records in the smaller room inside the vault, except by walking across the rubber mat in question.

The court, in the Piepmeyer case, expressly cited and distinguished two prior decisions, both of which are far more apropos to our situation than is the Piepmeyer decision. The first of the cases so cited

is Messing v. Judge and Dolph Drug Co., 322 Mo. 901, 18 S.W.2d 408, l. c. 416, where the court observed:

"And the jurisprudence of this state abounds with cases wherein the plaintiff servant knew of the danger, and so testified, yet was permitted to recover for an injury. [citing cases]"

The basis for such result is well stated in the second case cited and distinguished in the Piepmeyer decision, Edmondson v. Hotel Statler Co., 306 Mo. 216, 267 S.W. 612, l. c. 616, where the court repeated the well-established Missouri law that it is not contributory negligence as a matter of law for a plaintiff-employee to continue , to work in a given situation unless it is "glaringly dangerous". The court went on to say that in the absence of such glaring danger, the employee may continue to do whatever is necessary in order to perform the job:

"She was not, in the circumstances obliged to give up her employment or forfeit all right of recovery in case of injury in any way."

■ Since the condition of the rubber mat here was not "glaringly dangerous", and since there was no other way to perform the duties involved except by crossing the rubber mat in question, plaintiff's knowledge of the defective condition does not constitute a bar to his recovery.

## IV

■ In support of its argument that City should not be held liable because the negligence of the fellow servant Leslie was the cause of the accident, the City cites no authority which is in point. On the other hand, the case of Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, is directly in point and holds that the negligence of a fellow servant is no defense if the employer itself was guilty of negligence which contributed directly therewith to cause the plaintiff's injuries. Even if

we assume that Leslie was negligent, the jury has affirmatively found that the City was also negligent, and therefore, this case falls directly within the doctrine of the Kelso opinion.

The City's brief argues that "an inference may be drawn" that the premises were reasonably safe for any employee who was able to walk in a normal manner and that "it is equally inferable" that Leslie's inattention and inability to successfully negotiate the mat, was the sole and proximate cause of the accident. The simple answer to this argument is that whether or not such inferences could reasonably be drawn, the jury has declined to do so. Instead, the jury has found under an instruction, to which no complaint is now made, that the City's negligence "either directly caused damage to plaintiff or combined with the acts of Frank Leslie to directly cause damage to plaintiff". Such finding is decisive of this issue.

The judgment of the trial court is affirmed.