OPINION OF THE COURT
Gerard M. Weisberg, J.
For more than a decade, the New York State Department of Transportation Standard Specifications (Standard Specifications), incorporated into highway construction, design, improvement and reconstruction contracts, has provided a schedule of damages for the failure of a contractor to complete work on time. The amount per calendar day is dependent on the original contract amount.[1]
The issue for determination is whether, in a government contract, this constitutes a provision for enforceable liquidated damages or an unenforceable penalty.
Claimant, Melwood Construction Corporation, contracted with the defendant, State of New York, on May 10,1977, for the rehabilitation of four bridge structures. The original completion date was April 1, 1978. However, Melwood did not fully finish the work until December 20,1978. Therefore, the State withheld $500 per day for a total of $55,500 as liquidated damages,[2] which sum is a subject of this action.
*157 The purpose of a liquidated damages clause is to settle in advance any claims that may result in the event of a breach of the contract. Such amounts are recoverable when the extent of actual damages that would result from a breach are difficult or impossible to ascertain. (Mosler Safe Co. v Maiden Lane Safe Deposit Co., 199 NY 479.) However, the damages must be intended as compensation to the injured party. Therefore, the stipulated amount must have a reasonable relation to the actual damages likely to have resulted from a default. (Truck Rent-A-Center v Puritan Farms 2nd, 41 NY2d 420, 425; Seidlitz v Auerbach, 230 NY 167; Weinstein & Sons v City of New York, 264 App Div 398, affd 289 NY 741.) On the other hand, a stipulated damages provision is deemed punitive and unenforceable when it goes beyond compensation and serves to secure a party’s performance of the contract. (Truck Rent-A-Center v Puritan Farms 2nd, supra; 36 NY Jur 2d, Damages, § 154.)
In the present case, the State has acknowledged that the assessment of liquidated damages for each day of delay was intended solely as compensation for the inconvenience incurred by the public, rather than for any economic loss suffered directly by the State itself.[3] In fact, the assessment of liquidated damages was in addition to the assessment of engineering ($27,968) and other charges,[4] which were to compensate the State for its own additional expenses brought about by the delay.
The question thus is whether the inconvenience and injury suffered by the public constitute actual damages to the State qua contractee for which recovery may be had. If they are not, then the assessment of the stipulated amount must be deemed a penalty and the provision would be unenforceable.
In contracts between commercial parties, provisions for the payment of a sum for delay áre usually upheld. Loss of profits and general financial harm to the business may, under certain circumstances, be considered — in addition to added costs for completion of the work — in determining whether the amount *158 specified is proportional to the probable damages and, hence, not punitive. (See Curtis v Van Bergh, 161 NY 47; Ryan, P. C. v Orris, 95 AD2d 879.) Such profit-oriented considerations usually are not possible in contracts entered into by governmental bodies.[5] Therefore, a delay in performance which does not result in increased costs can result in no other financial loss to the contracting governmental body.
Nevertheless, the general principles of contract law governing the enforceability of a liquidated damages clause have been held to apply to a contract between a governmental body and a private party. (City of Rye v Public Serv. Mut. Ins. Co., 34 NY2d 470, 472.) However, it must still be determined whether the clause in question is enforceable. It is, therefore, appropriate to review the pertinent cases in the area.
Weinstein & Sons v City of New York (supra) is an example of this peculiar bind in which governmental bodies may find themselves. In that case, the city made a purchase order for dress woolens to be delivered to a sewing project to be made into skirts and distributed by the Department of Welfare. The city retained 20% of the contract price as liquidated damages for delay in delivery of the goods. However, the court held that “[a]ll the facts and surrounding circumstances herein indicate that the so-called liquidated damages bore no reasonable relation to any probable or actual loss and that the clause in question provided for a penalty and not liquidated damages. The proof establishes that no claims were made against defendant [City] and that defendant suffered no financial damage whatsoever.” (Weinstein & Sons v City of New York, 264 App Div 398, 400, supra.)
Subsequently, in United States v Walkof (144 F2d 75) the United States Court of Appeals for the Second Circuit in an opinion by Judge Augustus N. Hand held, to the contrary, that a Government agency may recover liquidated damages without actually suffering financial loss. The issue was the validity of a clause, in a War Department contract, for liquidated damages in the event of delay in the delivery of working suits. Noting that the contract was part of the Government’s war effort, Judge Hand distinguished Weinstein (supra) on the significance of the harm a breach could cause. He observed that in Weinstein the inconvenience to the city’s welfare work by the delay in delivery of the woolens was so insignificant as to not warrant recovery. However, regarding the delay in Walkof, the court stated that
*159 “[d]clay in obtaining equipment might result in losses far greater than the difference between the cost of the articles contracted for and others that might be obtained within a reasonable time. Delay might disrupt preparations for war in all sorts of ways * * *
“We cannot see that the New York courts have any different rule from that of the United States Courts in respect to the allowance of liquidated damages for delay”. (United States v Walkof, supra, p 77.)
While unobstructed highways are not as vital as are preparations for war, the State Legislature has considered the problem of traffic delays significant enough to allocate over $1,000,000,000 a year for highway construction and repair, according to the testimony of Jack Sternback, the Deputy Chief Engineer in charge of construction for the New York State Department of Transportation. The factors used in the determination of liquidated damages in highway construction contracts were also described by Mr. Sternback. These particulars have a direct relationship to the actual damage that the traveling public experiences as a result of late completions. They include speed reduction through work zones, delays incurred when portions of a highway are closed and the increased expense of operating vehicles at such times. Traffic volume, potential for a higher rate of accidents resulting from prolonged construction, and the comfort and convenience of motorists affected by work-related impediments are also taken into account.
In light of these considerations, Judge Hand’s distinction between Weinstein (supra) and Walkof (supra) on the question of whether a governmental body may recover liquidated damages for injuries of a nondirect financial nature, should extend to the present highway case.
Furthermore, in subdivision 11 of section 2556 of the Education Law, the Legislature has evinced an intent to allow governmental bodies to recover liquidated damages for delays in public improvement contracts without having to prove economic damages. That statute authorizes cities with populations of 1,000,000 or more to provide for liquidated damages in contracts for construction, alteration and repair, entered into by their boards of education. (See Kelly v Board ofEduc., 8 Misc 2d 1007, affd 7 AD2d 856, affd 8 NY2d 764.)
In a number of States, courts have held that even where a municipality suffers no pecuniary loss by failure of a public improvement contract, the municipality may still recover liquidated damages for harm sustained by its inhabitants. A *160 leading case is Six Cos. of Cal. v Joint Highway Dist. No. 13 (110 F2d 620, revd on other grounds 311 US 180, reh den 311 US 730). It involved the construction of a tunnel, designed to supplant longer existing roads that connected the business section of Oakland to outlying areas. The contractors ran into difficulties in digging the tunnel, fell well behind schedule and eventually abandoned the project. The court ruled that “[although a municipality, in its corporate capacity, may suffer no damage from delay in the completion of a public improvement, it may validly contract for liquidated damages for delay in contemplation of the inconvenience and loss which will flow to its inhabitants for whose benefit the improvement is intended and at whose cost it is to be built.” (Six Cos. of Cal. v Joint Highway Dist. No. 13, 110 F2d 620, 625, supra.)
This theory of recovery by a municipality on behalf of its inhabitants stems from an early line of decisions beginning in Michigan at the turn of the century. These cases, which were followed in other jurisdictions, concerned contracts for the installation of a variety of public services, such as electric power plants, railroad tracks, and waterworks. (Whiting v Village of New Baltimore, 127 Mich 66; City of Detroit v People’s Tel. Co., 135 Mich 696; Township of Springwells v Detroit, Plymouth & Northville Ry. Co., 140 Mich 277; Nilson v Jonesboro, 57 Ark 168; Parker-Washington Co. v City of Chicago, 267 Ill 136; City of Topeka v Industrial Gas Co., 135 Kan 646, cert den sub nom. National Sur. Co. v Topeka, 287 US 658; Fiscal Ct. of Franklin County v Kentucky Public Serv. Co., 181 Ky 245; City of Marshall v Adkins, 60 Tex Civ App 336; see, generally, Ann., 12 ALR4th 891.)
The courts held that the governmental bodies could recover liquidated damages on the theory that likened them to trustees for their citizens. Thus, in Brooks v City of Wichita (114 F 297), the validity of a liquidated damages clause in a contract for the installation of electric lights was at issue. The court stated that “[a city] has no private interests. It is a public agency, and acts for the public; and when it contracts for the establishment and maintenance by a private corporation of waterworks, gas or electric lights, street railroads, and other like public utilities, it does so in the performance of its public functions, and for the purpose of promoting the convenience and preserving the health of its citizens, and protecting them in their persons and property” (pp 298-299). The court further stated that “[a liquidated damages provision] is the only method by which the city can obtain anything like an adequate compensation for the loss and damage sustained by the public by the breach of such a contract. *161 The sum forfeited as liquidated damages goes into the treasury, and inures to the benefit of the public.” (Brooks v City of Wichita, supra, p 299.)
This theory of municipality as a trustee for the public is implicit in the holdings of several modern cases. For example, in Gustafson & Co. v State (83 SD 160), the issue was the validity of a provision in a highway construction contract that provided that the State was due a stipulated sum as liquidated damages for delay in completion by reason of inconvenience to the public, as well as several items that caused an added expenditure of public funds resulting from the contractor’s breach. In finding the provision valid, the court noted that damages to the public are difficult to ascertain and, therefore, it is proper for them to be specified in a liquidated damages clause. (See, also, Fortune Bridge Co. v Department of Transp., 242 Ga 531.)
We find this reasoning persuasive and conclude that the State, as trustee for its citizens, may impose liquidated damages for the actual harm caused to the public by the contractor’s delay. Accordingly, the clause in question is not a penalty and is enforceable.

. For example, in contracts where the original contract amount is up to $25,000, the liquidated damages per calendar day is $50, and where the original contract amount is for more than $500,000 to and including $2,000,000, as in the case at bar, the amount is $500 per day.

. The period April 1, 1978 to December 20, 1978 encompassed 263 calendar days. The assessment covers only 111 calendar days for the reason set forth in footnote 3 (infra).

. The work was substantially completed on July 21,1978. In accordance with section 108-03 of the Standard Specifications, the State ceased assessing daily damages before the work was fully completed because the obstructions on the bridges under repair had been removed and the inconvenience to the public had ended.

. Pursuant to section 637-4.01 of the Standard Specifications, the State was alleviated from the duty to pay for the State’s field engineer’s office during the time engineering charges were being imposed. Likewise, section 619-4.07 of addendum No. 3 to the Standard Specifications shifted the expense for watchmen service to the contractor during the delay period. The expense for the engineer’s office is claimed to be $2,750. Charges for the watchmen service of $7,667 are also asserted.

. The term “governmental bodies” is used in the broad sense, to denote the Federal Government, the State, municipalities and their agencies.