FOURT, J.
 

 Kings Industries, Inc., (hereinafter sometimes referred to as Kings), appeals from the judgment of the trial court, sitting without a jury, which awarded plaintiffs $11,911.60 damages for losses by theft which occurred when their Kings burglar alarm system failed to operate as represented.
 

 The case was tried on the theories of breach of contract,
 
 *917
 
 breach of warranty, and negligence. Appellant contends that the findings are unsupported by the evidence and that its liability on any of these allegedly applicable theories is in any event limited to $50 by the liquidated damage provision in its contract. The ease is controlled by the decision in
 
 Better Food Markets, Inc.
 
 v.
 
 American Dist. Tel. Co.,
 
 40 Cal.2d 179 [253 P.2d 10, 42 A.L.R.2d 580], which upholds the application of a similar clause.
 

 Try-It Stores (hereinafter sometimes called Try-It) on October 22, 1964, executed an agreement for the purchase and installation of a burglar alarm system and maintenance service from Kings. Kings thereafter installed the alarm system which included a perimeter silent alarm and ultrasonic detecting devices, one of which was situated on or near the rear door of the premises. Kings, which was in the business of selling, installing, servicing and maintaining burglar alarms and burglar alarm equipment, orally represented to Sidney Goldman, president of I & S Sellers, Inc., that once the alarm system was placed in operation for the evening any entry upon the Try-It store premises from either front or rear would signal Kings’ control board. Under the express terms of the contract, Kings agreed that, upon receipt of this signal, its representative would notify the police to check on the protected premises, and either would personally visit the premises or promptly advise the subscriber’s designated representative.
 

 At about 9:30 p.m. on December 11, 1964, the Try-It premises were closed for the night. The manager, Seymour Brodsky, tested the alarm system and determined that it was working, then set the burglar alarm. Immediately thereafter he and a fellow employee, Richard Silver, went out the rear door which Brodsky locked behind them. Kings received the customary closing signal at its control office.
 

 Just after the rear door was locked, a man in a stocking mask ordered the manager, at gunpoint, to reopen the door. Brodsky deliberately fumbled with his keys for some time to determine the correct one. Once the door was opened, the gunman directed Brodsky and Silver to enter the store and he followed them. Kings received at its central office an alarm signifying that the locked store had been reentered, but disregarded this signal assuming that it was a false alarm, and failed to respond according to their agreement. No one was notified, nor did anyone go to the protected premises.
 

 Meanwhile, Brodsky, who was forced to open the safe and
 
 *918
 
 deliver its contents to the gunman, had noted as they passed through the store a clicking sound which indicated that alarm signals were being transmitted to Kings office instantaneously, and, assuming that the police would soon arrive, he delayed in order to obtain the maximum time. Ultimately, however, the gunman obtained the cash from the safe, left Brodsky and Silver on the floor with wrists and ankles taped, and escaped with the loot. Shortly thereafter Brodsky freed himself and immediately called Kings. Only then were the police notified and they arrived at the Try-lt premises within two or three minutes. Although the gunman had remained on the premises seven or eight minutes, normally ample time for the police to respond, he was in this instance never apprehended and no part of the money was recovered.
 

 Robert Harris, general manager of Kings, testified that on the evening in question their central station received a normal closing signal, closely followed by an additional signal which indicated that the Try-lt store had been reentered, that Kings assumed it to be one of the recurrent Try-lt false alarms. At that time the system had been installed and functioning for over two months and, although Sidney Goldman and Brodsky admitted that some incorrect signals had been transmitted at first, they testified that false alarms had ceased after the first couple weeks. The evidence thus strongly suggests that Kings’ unjustified disregard of the reentry signal it received on the evening of December 11 was the proximate cause of plaintiffs’ loss.
 

 Try-lt subscribed to a burglar alarm system only, as contrasted to the combination burglar and holdup alarm system offered by Kings which incorporated, in addition to the protective devices hereinabove described, a button for a store employee to push in the event of a holdup. The distinction between a burglary and a holdup, by reference to the circumstances herein related, is specious because it purports to define only the type of installation rather than Kings’ duty or the nature of its response. Once Kings received a signal it was bound to perform, whether the conduct generating the alarm was a burglary, a holdup, or merely an innocent but unauthorized entry. The restrictive interpretation of the burglary alarm agreement urged by appellant is untenable because it would lead to absurd and obviously unintended results.
 
 (Baine
 
 v.
 
 Continental Assur. Co.,
 
 21 Cal.2d 1 [129 P.2d 396, 142 A.L.R. 1253], Civ. Code, § 1643.) We note, moreover, that the terms of the agreement may be interpreted by reference to
 
 *919
 
 the previous conduct of the parties
 
 (Crestview Cemetery Assn.
 
 v.
 
 Dieden,
 
 54 Cal.2d 744 [8 Cal.Rptr. 427, 356 P.2d 171];
 
 Tennant
 
 v.
 
 Wilde,
 
 98 Cal.App. 437 [277 P. 137]), and Kings’ prior conduct belies the conclusion that discretion was called for or exercised in the operation of the alarm system. Indeed, the Kings’ general manager testified that each time the alarm was received from Try-It, Kings responded by notifying the local police authority and this is the only reasonable interpretation of their contractual obligation.
 

 Appellant disputes the trial court’s findings which resolve the issue determining that Kings’ disregard of the alarm signal was the proximate cause of the Try-It loss. We are bound, however, to resolve evidentiary conflicts in favor of the findings.
 
 (Crawford
 
 v.
 
 Southern Pac. Co.,
 
 3 Cal.2d 427 [45 P.2d 183]
 
 ; Primm
 
 v.
 
 Primm,
 
 46 Cal.2d 690, 693 [299 P.2d 231].) As we have pointed out, substantial evidence supports the trial court’s finding that Kings received an alarm when the gunman entered the store. Experience further demonstrated that, had Kings then promptly notified the police, the officers should, barring unforeseeable intervening forces, have arrived at the store in approximately three minutes, or less. In fact, the theft required seven or eight minutes, and the police would have had ample opportunity to apprehend the solitary gunman.
 

 Appellant further contends that the trial court improperly designated Kings’ conduct as a breach of contract and negligence. This determination is not a contradiction in terms. “The same act may be both a tort and a breach of contract. [Citation.] Even where there is a contractual relationship between the parties, a cause of action in tort may sometimes arise out of the negligent manner in which the contractual duty is performed, or out of a failure to perform such duty. [Citations.]”
 
 (Eads
 
 v.
 
 Marks,
 
 39 Cal.2d 807, 810-811 [249 P.2d 257].)
 

 Finally, appellant claims that its liability is limited by the liquidated damage clause on the second page of the written contract which purports to restrict liability to $50 in the event of any failure in service.
 
 [1]
 
 The trial court found to
 
 *920
 
 cult to fix actual damages and that in the exercise of their business judgment the parties had agreed upon liquidated damages in the amount of $50. The California Supreme Court, however, confronted with facts strikingly similar to those herein related, where the effect of a clause differing in no material respects from the instant provision was disputed, held that not only did the provision in question constitute a good liquidated damages clause, but it was valid as a matter of law.
 
 (Better Food Markets, Inc.
 
 v.
 
 American Dist. Tel. Co., supra,
 
 40 Cal.2d 179, 184-187.) Although the defendant in that case received a directed verdict, and no specific findings were made, it was determined that the consequences of the defendant’s potential failure to perform its 'agreement to protect certain grocery store premises were so innumerable that it would have been “impracticable or extremely difficult to fix the actual damage” (Civ. Code, § 1671) as a matter of law.
 
 (Better Food Markets, Inc.
 
 v.
 
 American Dist. Tel. Co., supra,
 
 p. 186.) On similar and undisputed facts, we are bound by this conclusion.
 

 In order for a liquidated damages clause to be valid and binding, “. . . the amount agreed upon must result from a reasonable endeavor by the parties to estimate a fair compensation for any loss that may be sustained because of a breach.”
 
 (Atkinson
 
 v.
 
 Pacific Fire Extinguisher Co.,
 
 40 Cal.2d 192, 196 [253 P.2d 18];
 
 Better Food Markets, Inc.
 
 v.
 
 American Dist. Tel. Co., supra.)
 
 In the instant case Sidney Goldman testified that he never read the second page of the agreement, nor were any of the terms therein contained pointed out to him by Kings or discussed at any time. There was evidence that, at the time the written contract was executed, the minimum average cash customarily kept on the Try-It premises was about $1,500 with increases over holidays such as Easter and Christmas and there was no evidence that this factor was considered in setting the amount of liquidated damages.
 

 “The plaintiff’s contention that the agreed amount did not represent an endeavor by the parties to estimate the probable damage is based on evidence that the liquidation clause was part of the printed material in a form contract generally used by the defendant in dealing with subscribers such as the plaintiff, and that the defendant did not investigate the plain
 
 *921
 
 tiff’s manner of conducting its business or the character and value of its stock. Nevertheless the parties agreed to the liquidation provisions, and there is no evidence that they were not fully aware of the circumstances malting it desirable that liquidated damages be provided for.”
 
 (Better Food Markets, Inc.
 
 v.
 
 American Dist. Tel. Co., supra,
 
 p. 187.)
 

 Sidney Goldman, as president of at least one corporation engaged in commercial trade, must be presumed to have executed the agreement with knowledge that he was bound by its terms and it was incumbent upon him to review and acquire at least a working knowledge of the advantages and limitations of the contract. He cannot now be heard to refute its effect or to avoid the consequences by disclaiming knowledge where he had the opportunity to discuss and negotiate terms.
 
 (Security First Nat. Trust & Sav. Bank
 
 v.
 
 Loftus,
 
 129 Cal.App. 650, 654 [19 P.2d 297].) Plaintiffs are entitled to receive judgment for $50 only as liquidated damages.
 

 The judgment is reversed with direction to the trial court to enter findings and judgment in accordance with this opinion.
 

 Wood, P. J., and Lillie, J., concurred.
 

 A petition for a rehearing was denied December 11, 1967, and respondents’ petition for a hearing by the Supreme Court was denied January 11,1968.
 

 [1]
 

 ' It is agreed by and between the parties that the Contractor is not an insurer; that the consideration above set forth is based solely on the value of the service in the maintenance of the system
 
 described;
 
 that it is impracticable and extremely difficult to fix the actual damages, if any, be untrue the allegations in appellant’s answer, including those allegations that it was impracticable and extremely diffi
 
 *920
 
 which may proximately result from a failure on the part of the Contractor or system to perform such service, the liability therefore shall be limited to and fixed at the sum of Fifty Dollars as liquidated damages and not as a penalty, and this liability shall be exclusive.
 
 ’ ’