[Civ. No. 46566. Second Dist., Div. Four. Apr. 15, 1976.]

UNITED SAVINGS AND LOAN ASSOCIATION OF CALIFORNIA, Plaintiff, Cross-defendant and Respondent, v.
REEDER DEVELOPMENT CORPORATION,
Defendant, Cross-complainant and Appellant.

**COUNSEL**

Sims & Solomon and Gabriel W. Solomon for Defendant, Cross-complainant and Appellant.

Fine & Pope and C. Richard Dodson for Plaintiff, Cross-defendant and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—This is an appeal by defendant Reeder Development Corporation (hereinafter referred to as Reeder) from a judgment rendered in favor of plaintiff United Savings and Loan Association (hereinafter referred to as United). The action, tried to the court, was for damages for breach of a written contract (hereinafter referred to as The Agreement) for the sale of real property by United Savings and Loan Association to defendant Reeder. Citizens Savings and Loan Association, as the successor in interest to United, was substituted as plaintiff after United had commenced the action.[1]

United sought recovery for $20,000 as liquidated damages, and for an additional sum as reasonable attorney's fees for prosecuting the action. Reeder sought damages on a cross-complaint against United for fraudulent representation and a sum for its attorney's fees. Judgment was granted in favor of United on its complaint for the $20,000 sought as liquidated damages and for $13,771 as attorney's fees. The judgment also was in favor of United on Reeder's cross-complaint.

The Agreement of sale was executed by United and Reeder as the parties thereto on September 21, 1971. The property which was the subject of The Agreement consisted of approximately 28.9 acres, and was part of a larger parcel of property owned by United and known as the Borchard Ranch. The approximately 28.9 acres consisted of unimproved land in the City of Thousand Oaks (hereinafter referred to as the City) in the County of Ventura. Of this acreage being sold, approximately 22.7 acres consisted of flat land and the remaining 6.2 acres were mountainous or hilly areas.

There is no dispute that United was selling this acreage to Reeder for the latter's development into residential property. The contract purchase price was set forth as $10,000 per acre for the flat land, and $2,000 per acre for the hilly land, making a total purchase price of approximately $243,000.

Three areas of The Agreement constitute the fulcrum around which swirls the dispute between plaintiff and defendant in the instant case. One area relates to the provisions for payment of the purchase price. A

---

[1]Although, by stipulation of the parties and order of the trial court, Citizens was substituted for United as plaintiff prior to trial, the judgment was actually rendered in favor of United as plaintiff.

second area pertains to a condition subsequent, and the third area concerns a liquidated damages provision.

*Payment of the purchase price.* The Agreement provided for the payment of $10,000 directly to United upon the execution of The Agreement. Within 90 days after execution, an escrow was to be opened at Title Insurance and Trust Company, Oxnard, California, and Reeder was to deposit therein $10,000; United was to deposit in the escrow the initial $10,000 received by it outside of escrow, and this $20,000 was to be applied to the purchase price upon close of escrow, with the balance of the purchase price to be paid into the escrow prior to closing.

*The condition subsequent.* One paragraph of The Agreement provided, in pertinent part: "Buyer shall have 90 days after the execution of this Agreement by all parties within which to make such engineering studies, zoning and other matters relevant to Buyer's use of said property and to determine the suitability of said property for Buyer's purposes. If Buyer notifies Seller within said 90 day period that the real property is not suitable for Buyer's purposes, then this Agreement shall be null and void and of no further force and effect."

*Liquidated damages.* The Agreement provided for a maximum of 180 days for completion of escrow, with an earlier closing upon recordation of the buyer's final subdivision map. It also provided: "If escrow does not close through default on the part of the Buyer, the sum of Twenty Thousand Dollars ($20,000) herein agreed to be deposited into escrow by Buyer shall be released out of escrow . . . and paid to Seller and said sum . . . shall be retained by Seller as liquidated damages due to the difficulty which Buyer and Seller have had in attempting to determine Seller's actual damages, and the retention of said sums shall constitute Seller's sole money remedy in the event of breach by Buyer of this Agreement to sell real property."

A separate paragraph of The Agreement called for all notices to be sent by registered or certified mail to the seller and buyer at the addresses set forth, with copies to be given to the escrow holder.

The case was tried upon a written stipulation of facts, together with evidence introduced by the respective parties. The trial court made written findings of facts and conclusions of law.

The facts stipulated to included the following: (1) that United and Reeder discussed and agreed upon the purchase price, the description of the property, and the designation of Title Insurance and Trust Company of Oxnard as the escrow agent; (2) that none of the other terms and conditions of The Agreement was ever discussed with, nor suggested by Reeder or any representative of Reeder, and that all of the other provisions of The Agreement were drafted exclusively by the chief counsel for United; (3) that Reeder and the vice president of United both signed The Agreement and read the same prior to signing the same; (4) that United and Reeder and each and all of their representatives who participated in this transaction were persons sophisticated, knowledgeable and experienced in transactions of this type; (5) that at the time the parties entered into The Agreement, it was known to them that Reeder was interested in acquiring the property only if Reeder determined that the property could be profitably developed as a residential subdivision; (6) that the additional $10,000 referred to in The Agreement was never deposited by Reeder, nor specifically demanded by United at any time prior to January 6, 1972; that on January 5, 1972, United demanded that Reeder deposit all payments provided for in The Agreement; (7) that no moneys were ever deposited in any escrow; (8) that during the 90 days from September 24, 1971, to and including December 24, 1971, Reeder expended approximately $20,000 in engineering and overhead expenses in an effort to determine whether the property was suitable for its desired purposes; and (9) that United was generally aware of said activities on Reeder's part.

The trial court found that Reeder had not given United any written notice, within the 90-day period from the execution of The Agreement, that the property was not suitable for Reeder's purposes; and that failure to comply with this condition subsequent left Reeder bound by The Agreement as purchaser. The evidence supports this finding by the trial court.

Reeder attacks this finding, contending that the parties to The Agreement had a basic understanding that Reeder was to be bound by The Agreement only if the City approved of Reeder's plan for the development of the property, and that the 90-day period was not to be operative as long as Reeder was making good-faith efforts to secure the City's approval of its plan of development.

Reeder also asserts that the 90-day-condition-subsequent provision cannot be given any legal effect because United knew, at all times, both

before and after expiration of the 90-day period, that (1) the City had not given approval for Reeder's plan of development—which was to use all of the flat acreage for homes and the hilly areas to satisfy the City's green-belt requirements, and (2) that Reeder was not required to pay the $20,000 in escrow unless the City gave approval to its plan of development.

Reeder contends that, in light of the alleged basic understanding of the parties to The Agreement and the alleged knowledge of United that the property was "not suitable for Buyer's purposes," no written notice to this effect was therefore required. Reeder relies upon three legal principles as being applicable. One is found in the statement set forth in *City of Stockton* v. *Stockton Plaza Corp.* (1968) 261 Cal.App.2d 639, 655 [68 Cal.Rptr. 266], that "the law does not require meaningless or idle acts. (Civ. Code, § 3532.)"

The other two principles relate to the parol evidence rule. One concerns the introduction of extrinsic evidence to prove the meaning of a contract. Reeder calls attention to the fact that the parol evidence rule is no bar to extrinsic evidence that "is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." (*Delta Dynamics, Inc.* v. *Arioto* (1968) 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785]; see also *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11 [92 Cal.Rptr. 704, 480 P.2d 320]; Jefferson, Cal. Evidence Benchbook (1972) and Supp. (1975) § 32.3.)

The second parol evidence principle referred to is stated by Reeder to be a principle that "mandates that all evidence indicative of the circumstances, pragmatic realities, concerns and goal of the parties must be allowed into the record and the so-called parol evidence rule is no barrier." (App.Op.Br., p. 22.) Reeder is apparently referring to the legal rule that extrinsic evidence of a term or agreement collateral or additional to an express provision of a written instrument is not made inadmissible by the parol evidence rule if it is shown that the written instrument was not intended by the parties to constitute an integration or final complete expression of their agreement; that such nonintegration intent may be established by showing that such collateral or additional term or agreement is either one that might naturally be made as a separate agreement by the parties situated as were those executing the written instrument, or, is not one that, if made, would certainly have been included in the written instrument. (*Masterson* v. *Sine* (1968) 68 Cal.2d 222 [65 Cal.Rptr. 545, 436 P.2d 561]; *Birsner* v. *Bolles* (1971) 20

Cal.App.3d 635 [97 Cal.Rptr. 846]; see Jefferson, Cal. Evidence Bench-book (1972) and Supp. (1975) § 32.2)

■ The three legal principles relied upon by Reeder are sound and valid rules of law, but what is lacking here is any evidence in the record to bring these legal principles into play. Thus, there is no evidence in the record that would support a finding that the parties to The Agreement had an understanding that was contrary to the express terms of the condition subsequent, or that would otherwise render the condition subsequent inoperative. On the contrary, the stipulation of facts sets forth that there was no discussion between United and Reeder or any representative of Reeder with respect to the terms and conditions of The Agreement other than the purchase price, the description of the property and the designation of the escrow agent.

Nor is there evidence in the record that would support a finding that United had knowledge, prior to the expiration of the 90-day-condition-subsequent period, that the property which was the subject of The Agreement, was "not suitable for Buyer's purposes." Evidence that United had knowledge that Reeder would have no use for the property absent the City's approval of its plan of development, and that, as of December 24, 1971, the expiration date of the 90-day-condition-subsequent period, United knew that Reeder had not secured City approval for its plan of development but was on the property performing engineering and other studies and was pursuing its application to the City for approval of its development plan, is insufficient proof that United had knowledge, actual or constructive, that Reeder considered that the property was *not suitable* for its use.

The evidence establishes that Reeder did not pay $10,000 to United upon execution of The Agreement and did not deposit into escrow any additional $10,000 within 90 days of the execution of The Agreement, as required by The Agreement. Reeder asserts that this failure on its part to comply with The Agreement also gave United actual notice that Reeder considered the property unsuitable for its purposes. But the stipulation of the parties sets forth that the parties agreed concurrently with the execution of The Agreement that United would accept, and did accept, a draft for $10,000 to be paid upon Reeder's instructions, in lieu of $10,000 cash.

■ This argument of Reeder in effect asserts that a waiver of one provision of The Agreement by United gave notice to United of Reeder's

decision that the property was not suitable for the latter's purposes. There is no merit to such argument. The Agreement specifically provided that a waiver by one party to The Agreement of one condition or promise was not to be considered as a waiver of any other condition or promise nor as invalidating The Agreement.

Reeder asserts that the trial judge committed reversible error in excluding proffered evidence that would have supported Reeder's contentions relating to the applicability of the parol-evidence-rule principles and the issue of knowledge by United that would have made the condition-subsequent-notification provision of The Agreement inoperative. The evidence, excluded by the trial court as irrelevant, was the subject of an offer of proof made by Reeder.

Reeder's offer of proof was to the effect that United had entered into written purchase and sale contracts with other buyers, both before and after the date of The Agreement between United and Reeder, which included the property subject to The Agreement; that these contracts were substantially the same as The Agreement between United and Reeder, with time-limit-condition-subsequent periods; that United followed a practice that if the buyer was doing engineering, going forward and attempting to put the package together, United would extend the deadline when the contract was to become absolute as long as the buyer was working in good faith to complete the transaction, and that at the end of the condition-subsequent time period, United voluntarily returned the deposited funds to the buyer and claimed no right to retain these funds.

■ The trial court did not commit error in sustaining an irrelevancy objection to Reeder's offer of proof and excluding the proffered evidence. In the first place, Reeder's offer of proof was defective. The offer of proof did not make known to the trial court (1) the substance, (2) the purpose, and (3) the relevance of the proffered evidence that was excluded, as required by Evidence Code section 354, subdivision (a).[2]

---

[2]Evidence Code section 354 provides, in pertinent part: "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice and it appears of record that: [¶] (a) The substance, purpose, and relevance of the excluded *evidence* was made known to the court by the question asked, an offer of proof, or by any other means." (Italics added.)

The major defect was the failure of Reeder to set forth in its offer of proof the substance of the *evidence* that was being offered. Evidence Code section 140 defines evidence to mean "testimony, writings, material objects, or other things presented to the senses . . . ." An offer of proof that sets forth the substance of *facts* to be proved does not comply with Evidence Code section 354, subdivision (a), since *facts* do not constitute *evidence.* The substance of evidence to be set forth in a valid offer of proof means the testimony of specific witnesses, writings, material objects, or other things presented to the senses, to be introduced to prove the existence or nonexistence of a fact in issue.

Although Reeder's offer of proof did set forth certain writings being proffered in evidence, the statement about United's practices with other buyers in connection with extensions of time and the return of deposits falls into the category of an offer of *facts* to be proved—not an offer of evidence to be introduced in the form of the testimony of witnesses, or writings as exhibits. (See *Dillenbeck* v. *City of Los Angeles* (1968) 69 Cal.2d 472, 476, fn. 1 [72 Cal.Rptr. 321, 446 P.2d 129].)

But even if Reeder's offer of proof had complied in form with the requirements of Evidence Code section 354, subdivision (a), it would have fallen short because of a lack of a showing of relevancy. Evidence that United followed certain practices with other buyers and automatically extended condition-subsequent periods, and even returned deposits after such contracts became absolute, has no "tendency in reason" (see Evid. Code, § 210) to prove that United agreed with Reeder that such practices would be followed in the United-Reeder contract. Reeder's offer of proof did not proffer evidence that Reeder either knew of these practices, or reached any understanding with United at the time of the execution of The Agreement that such practices were to be applicable to The Agreement executed by United and Reeder.

The trial court found that Reeder had breached The Agreement and that United was entitled to recover $20,000 by virtue of the liquidated damages provision of The Agreement. Reeder attacks the validity of this provision of The Agreement.

Reeder asserts that the language of the provision precludes its application to make Reeder liable under such provision. Reeder focuses on the language that the $20,000 was to be "released" out of escrow and paid to the seller, and that said sum was to be "retained" by the seller as liquidated damages. Reeder argues that since no part of $20,000 was ever

deposited into escrow or *released* out of escrow to United, there was no $20,000 being *retained* by United as liquidated damages. Hence, the liquidated-damages provision was ineffective to create a liability on Reeder. This suggested interpretation represents a frivolous contention and requires no further comment.

A more serious problem, however, revolves around the effect of such a · liquidated damages clause in a contract, and whether the evidence supports the trial court's finding that United was entitled to $20,000 as liquidated damages from Reeder because the parties agreed that, in the event of breach of The Agreement by Reeder, "(1) it would be extremely difficult to fix UNITED's actual damages, and (2) the sum of $20,000 was a reasonable amount of damages in view of the parties' estimate of actual damages that would be sustained by UNITED upon breach."

Authorization for a liquidated-damages clause in a written contract is derived from two sections of the Civil Code. Section 1670 provides: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section." Civil Code section 1671 provides: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

In view of Civil Code section 1670, a liquidated damages clause in a contract is invalid unless it complies with the provisions of Civil Code section 1671. ■ The basic policy that underlies Civil Code sections 1670 and 1671 is that of denying to parties to a contract the right to. arrange for an unwarranted forfeiture upon a breach by one of the parties. In the case of sale-of-property contracts, the most likely forfeiture to be avoided is that of down payments and other payments by defaulting vendees.

In *MacFadden* v. *Walker* (1971) 5 Cal.3d 809 [97 Cal.Rptr. 537, 488 P.2d 1353, 55 A.L.R.3d 1], we find a reiteration of this principle that precludes a forfeiture of payments by a defaulting vendee in favor of a vendor with respect to a sale-of-property contract. Thus, the *MacFadden* court points out that *Freedman* v. *The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1] established the legal principle "that the prohibition of punitive damages for breach of contract (Civ. Code,

§ 3294), the strict limitations on the right to provide for liquidated damages (Civ. Code, §§ 1670, 1671), and the provision that 'Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case . . .' (Civ. Code, § 3369) together established a policy that precludes any forfeiture having no reasonable relation to the damage caused by the vendee's breach even when that breach is wilful." (*MacFadden, supra,* 5 Cal.3d 809, at pp. 813-814.)

One question before us, therefore, is whether, in the instant case, this "policy that precludes any forfeiture having no reasonable relation to the damage caused by the vendee's breach even when that breach is wilful" (*MacFadden, supra,* 5 Cal.3d 809, at p. 814), has been violated by the trial court's findings and judgment. Defendant contends that it has.

California decisional law that has dealt with section 1671 of the Civil Code has been found primarily in cases decided prior to the advent of the Evidence Code in 1968. However, in view of the provisions of the Evidence Code, it is necessary that we determine whether Civil Code section 1671 creates a rebuttable presumption, and, if so, whether it is a presumption that affects the burden of producing evidence or a presumption that affects the burden of proof. If section 1671 creates a presumption, a determination must be made with respect to what are the *basic facts* of the presumption, and the nature of the evidence that may be introduced with respect to the existence or nonexistence of the *presumed fact.*

In order to reach a determination of the appropriate interpretation of Civil Code section 1671, we turn both to the Evidence Code and the decisional law. Evidence Code section 602 provides: "A statute providing that a fact or group of facts is prima facie evidence of another fact establishes a rebuttable presumption." The implication from Evidence Code section 602 would seem to be compelling that any statute which provides that a fact or group of facts is *presumed* to result from evidence of other facts establishes a presumption. Civil Code section 1671 is such a statute. ■ We hold, therefore, that Civil Code section 1671 creates a rebuttable presumption.

The next question to be decided is whether the presumption is one that affects the burden of producing evidence or is a presumption that affects the burden of proof. (Evid. Code, § 601.) Using the criteria set

forth in Evidence Code sections 603[3] and 605,[4] we conclude that the presumption created by section 1671 of the Civil Code is a presumption that affects the burden of producing evidence, rather than a presumption that affects the burden of proof. It seems clear that the presumption established by Civil Code section 1671 is designed basically to implement the public policy of facilitating the determination of the particular action in which the presumption is applied. It does *not* appear that Civil Code section 1671 was enacted in order to carry out or effectuate some public policy other than, or in addition to, the policy of facilitating the determination of an action. (See Jefferson, Cal. Evidence Benchbook (1972) § 46.2, pp. 797-801; *Miranda* v. *Department of Human Resources Dev.* (1973) 33 Cal.App.3d 314 [109 Cal.Rptr. 35].)

Having determined that the presumption created by Civil Code section 1671 is a presumption affecting the burden of producing evidence, we now move to consider what are the *foundational facts* of the presumption and what is the *presumed fact*. A study of the decisional law offers some guidance on this problem but does not provide us with definitive answers.

We start with *Wright* v. *Rodgers* (1926) 198 Cal. 137 [243 P. 866]. *Wright* began with a consideration of Civil Code section 3387 that provides: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." *Wright* then declared that section 3387 created a rebuttable presumption of the validity of a liquidated damages clause in sale-of-real-property contracts under Civil Code section 1671. The *Wright* case then declared that this presumption of the validity of a liquidated damages provision would be established solely from the proponent's proof that such a provision was set forth in the contract, and that the burden would be upon the opponent to introduce evidence with respect to the difficulty or impracticality of determining the actual damages.

---

[3]Evidence Code section 603 provides: "A presumption affecting the burden of producing evidence is a presumption established to implement no public policy other than to facilitate the determination of the particular action in which the presumption is applied."

[4]Evidence Code section 605 provides: "A presumption affecting the burden of proof is a presumption established to implement some public policy other than to facilitate the determination of the particular action in which the presumption is applied, such as the policy in favor of the establishment of a parent and child relationship, the validity of marriage, the stability of titles to property, or the security of those who entrust themselves or their property to the administration of others."

It is doubtful if the *Wright* case can still be considered sound law on this point since it was determined before the advent of the Evidence Code which now legislatively establishes the nature and effect of a rebuttable presumption. For example, prior to the advent of the Evidence Code, California decisional law had held that a presumption is itself evidence. The Evidence Code now makes it clear that a presumption is *not* evidence but simply a reasoning process by which a finding of the existence of one fact is required from proof of the existence of another fact. The better view is stated in the later case of *Greenbach Bros., Inc. v. Burns* (1966) 245 Cal.App.2d 767, 771 [54 Cal.Rptr. 143], even though it is also a pre-Evidence Code case: "The recital of the statutory language in the liquidated damage clause of a contract is but the conclusion of the parties and does not foreclose the court from a full inquiry into the facts."

From a reading of Civil Code section 1671, it follows that one of the foundational facts of the presumption which the proponent of the liquidated damages provision must prove by a preponderance of the evidence is the impracticality or extreme difficulty in determining actual damages.

Such an interpretation of Civil Code section 1671, gained from a literal reading of the section, finds ample support in our decisional law. "Where, as here, a party seeks to recover liquidated damages pursuant to the terms of a contract, it must appear that the requirements of section 1671 have been satisfied, that is, that actual damages are, under the circumstances of the case, impracticable to ascertain or extremely difficult to fix." (*Greenbach Bros., supra,* 245 Cal.App.2d 767, at pp. 770-771.)

"It has been held in many cases that whether it would be impracticable or extremely difficult to fix actual damages for breach of contract is purely a fact issue, to be resolved by the trier of the facts. [Citations.] Thus the validity of a provision for liquidated damages will depend in each case upon the sufficiency of the evidence to bring the case within the exception of section 1671." (*Greenbach Bros., supra,* 245 Cal.App.2d 767, at p. 771.)

We conclude that the *foundational facts* of the Civil Code section 1671 presumption are the following: (1) an agreement by the parties fixing an amount to be considered as liquidated damages for a breach of the contract; (2) that it would be impracticable or extremely difficult to fix

the amount of· actual damages; and (3) that the amount stated as liquidated damages is the result of a reasonable endeavor by the parties to state an amount that bears a reasonable relationship to actual damages. The *presumed fact* of the presumption is that the amount set forth as liquidated damages constitutes the *actual loss or damage* sustained by breach of the contract.

█ It is clear that the time when it must appear that there is an impracticality or difficulty in determining or fixing damages relates to the time when the contract is entered into—when the parties would be considering "the nature of the breaches that might occur and any consequences that were reasonably foreseeable." (*Better Foods Mkts.* v. *Amer. Dist. Teleg. Co.* (1953) 40 Cal.2d 179, 185 [253 P.2d 10, 42 A.L.R.2d 580].) Hence, it is immaterial whether or not there is impracticality or difficulty in fixing damages after there has been a breach of the contract. However, evidence of the sales price of a subsequent sale of the same property may well be relevant on the issue of impracticality or difficulty in fixing actual damages as of the date of execution of the contract. Thus, in *Freedman* v. *The Rector* (1951) 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], a purchaser of real property made a down payment of $2,000 on the purchase of two lots for a total purchase price of $18,000. The contract provided that on breach by the buyer, the seller could retain the down payment. The purchaser brought an action to recover from the seller the down payment which the seller had retained after the buyer's breach of the contract.

In *Freedman,* evidence was presented at the trial by the purchaser that the seller had resold the property for $20,000—$2,000 more than the contract price to plaintiff, the purchaser. The court held that this retention-of-down-payment clause could not be enforced as a valid provision for liquidated damages under Civil Code section 1671. The court stated: "Although such a provision in a contract for the sale of real property is presumptively valid, if the down payment is reasonable in amount [citations], when as in this case the evidence establishes that it would *not* 'be impracticable or extremely difficult to fix the actual damages' (Civ. Code, § 1671), such a provision may not be enforced as one for liquidated damages. [Citations.]" (*Freedman, supra,* 37 Cal.2d 16, at p. 23.) The *Freedman* court also stated that "[s]ince defendant resold the property for $2,000 more than plaintiff had agreed to pay for it, it is clear that defendant suffered no damage as a result of plaintiff's breach." (*Id.,* at p. 19.)

█

We have indicated that one of the foundational facts which the proponent of the Civil Code section 1671 presumption must establish is that the *parties*—as distinguished from only one of the parties—made a reasonable endeavor to estimate a fair average compensation for any loss that may be sustained. In *Greenbach Bros.,* the court said: "Also, and of primary importance here, the amount agreed upon must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained." (*Greenbach Bros.,* *supra,* 245 Cal.App.2d 767, at p. 772; to like effect, see *Dyer Bros. I. Wks.* v. *Central I. Wks.* (1920) 182 Cal. 588 [189 P. 445]; *Rice* v. *Schmid* (1941) 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589]; and *Caplan* v. *Schroeder* (1961) 56 Cal.2d 515 [15 Cal.Rptr. 145, 364 P.2d 321]; but see *Better Foods, supra,* 40 Cal.2d 179, at p. 187.)

■ We consider briefly the method of operation of the Civil Code section 1671 presumption as a presumption that affects the burden of producing evidence. The proponent of the presumption has the burden of proving, by a preponderance of the evidence, the foundational facts of the presumption. As in the case of all presumptions, the opponent may introduce evidence tending to establish the nonexistence of the foundational facts, or the presumed fact, or both. Evidence to rebut the existence of the foundational facts might be evidence that the amount stated in the contract was not determined as a result of any reasonable endeavor by both parties to the contract to arrive at an amount that bore a reasonable relationship to actual damages, or that it was neither impracticable nor extremely difficult to determine actual damages.

■ If the opponent of the presumption offers evidence that the parties did not really agree upon the amount set forth as liquidated damages through any mutual endeavor, or evidence that it was neither impracticable nor extremely difficult to determine actual damages, the attack is *not* upon the existence of the presumed fact, but upon the existence of the foundational facts of the presumption. Hence, the trier of fact in this situation is required to determine only whether the proponent of the presumption has established, by a preponderance of the evidence, the existence of the foundational facts. If so, the trier of fact *must* find that the presumed fact exists. (See Evid. Code, § 604; Jefferson, Cal. Evidence Benchbook (1972) and Supp. (1975) § 46.3.)

What evidence may an opponent of the Civil Code section 1671 presumption introduce to attack the nonexistence of the presumed fact—that the liquidated damages amount represents the actual damages

suffered by the breach? Evidence that would tend to rebut the existence of the presumed fact could be evidence to the effect that the stated liquidated damages amount bears no reasonable relationship to the actual damages suffered by the proponent of the presumption.

■ The reasonableness factor of the amount set forth in a liquidated damages provision relates to the question of whether the amount set forth has any relation to actual damage. If the amount set forth does not have any relation to damages suffered, the provision is invalid because of the rule precluding the allowance of punitive damages for breach of contract. This was the situation presented in *Freedman*, in which the purchaser introduced evidence that the seller had made a resale of the property to a third person for $2,000 in excess of the contract price with the purchaser.

This evidence tended to establish that the seller had suffered no damage as a result of the purchaser's breach because of the measure of damages for breach of a contract to purchase real property as set forth in Civil Code section 3307: "The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him."

It is also reasonable to hold that evidence offered by a buyer as to the resale price on a subsequent sale of the property by the seller may be relevant as tending to prove the nonexistence of the foundational fact of the impracticality or extreme difficulty in measuring damages, as well as tending to prove the nonexistence of the presumed fact—that the liquidated damage amount was the amount of damage suffered.

■ If the opponent of the presumption offers no evidence as to the nonexistence of the foundational facts, but makes an attack upon the presumed fact by offering evidence that the amount set forth in the liquidated damages provision is unreasonable, such as being well in excess of the actual damage suffered by the seller from the buyer's breach, and such evidence is sufficient to support a finding of the nonexistence of the presumed fact, the presumption then disappears or terminates, and the burden of proof is upon the proponent to establish, by a preponderance of the evidence, the actual damages suffered. (See Evid. Code, § 604; Jefferson, Cal. Evidence Benchbook (1972) and Supp. (1975) § 46.3.)

In the case at bench, the record indicates that, although United offered evidence that United considered the actual damages difficult to fix or determine, it was purely a determination made by United, with no discussion between United and Reeder as to how the $20,000 figure for liquidated damages was calculated. There is no evidence in the record to support the trial court's finding that "the sum of $20,000 was a reasonable amount of damages in view of the *parties'* estimate of actual damages that would be sustained by UNITED upon breach." (Italics supplied.) The recital in the liquidated damages clause that said sum shall be retained by seller as liquidated damages "due to the difficulty which Buyer and Seller have had in attempting to determine Seller's actual damages" is contrary to the stipulation of facts entered into by the parties and contrary to the evidence contained in the record.

Since United failed to sustain its burden of proof and of establishing the three foundational facts of the Civil Code section 1671 presumption, United has failed to establish that it was entitled to judgment for $20,000—the liquidated damages amount—against Reeder.

No error was committed by the trial judge's failure to make findings as requested by Reeder. Such findings were not relevant to the issues presented.

The evidence amply supports the findings and judgment in favor of United as cross-defendant against Reeder as cross-complainant on Reeder's cross-complaint.

That portion of the judgment in favor of United as cross-defendant and against Reeder as cross-complainant on Reeder's cross-complaint is affirmed. All other portions of the judgment are reversed.

Each party is to bear its own costs on appeal.

Kingsley, Acting P. J., concurred.

**DUNN, J.**—I dissent. I would affirm the judgment favoring plaintiff.

The majority cites two cases decided before the Evidence Code became effective on January 1, 1967, (Evid. Code, § 12) i.e., *Wright* v. *Rodgers* (1926) 198 Cal. 137 [243 P. 866] and *Greenbach Bros., Inc.* v. *Burns* (1966) 245 Cal.App.2d 767 [54 Cal.Rptr. 143]. The majority then determines that, of these two pre-Evidence Code opinions, the one by

the District Court of Appeal is the more appealing and the majority decides to follow it. This, I cannot do, for the reason that a decision by our highest court is binding upon us, whether we agree with it or not as presently applied. Thus, this court may not, nor may another Court of Appeal, overrule our Supreme Court. *Wright* was an appeal by a plaintiff from a nonsuit granted to the defendant. The order granting the nonsuit was reversed. There, it was held that the plaintiff had made out a prima facie case by filing, in the trial court, a contract for the exchange of real property. *Greenbach* does not mention the *Wright* decision. It is an appeal from an order granting a new trial. The order was sustained upon the ground (see p. 773 of *Greenbach*) that the judgment was against the law because there was no evidence of an effort by the parties to the contract to ascertain damages and, thus, the requirements of Civil Code section 1671 had not been met. The two cases appear adamantly opposed to each other, since, in each case the contract was introduced into evidence and the contract, in each case, provided for. liquidated damages. I can see no alternative to following our Supreme Court. If it wishes to change its rule, it may do so. I may not. Or, if the Legislature, by enacting the Evidence Code, has changed the rule the Supreme Court may recognize such fact and change its own rule. Until it does change the rule, however, I feel myself bound to follow its rulings, irrespective of my beliefs concerning whether, in light of changed circumstances, the rule is a good one.

Under such a view it becomes irrelevant to determine if the rebuttable presumption created by Civil Code section 1671, is one affecting the burden of proof or of going forward with the evidence. Accordingly, the majority discussion of "iffy" matters of proof (beginning on p. 300 with the words "We consider briefly . . ." and ending on page 302 is unnecessary dicta.

Since the majority do not discuss the elements of Reeder's cross-complaint against United, I do not know whether to agree or disagree with the majority. For that reason I, too, will ignore the same, as well as ignoring the aspect of United's judgment against Reeder for attorney's fees.

A petition for a rehearing was denied May 3, 1976, and the petitions of the appellant and the respondent for a hearing by the Supreme Court were denied June 9, 1976.