**CITY OF FARGO, Plaintiff and Appellee,**

v.

**CASE DEVELOPMENT COMPANY, Defendant and Appellant.**

Civ. No. 11183.

Supreme Court of North Dakota.

March 2, 1987.

Solberg, Stewart, Boulger & Miller, Fargo, for plaintiff and appellee; argued by Wayne Solberg.

DeMars, Turman & Johnson, Broadway Park Office Complex, Fargo, for defendant and appellant; argued by David T. DeMars.

LEVINE, Justice.

Case Development Company [Case] appeals from a district court judgment awarding the City of Fargo [City] $100,000 in liquidated damages for Case's breach of a contract to purchase and redevelop a building in downtown Fargo. We affirm.

In October 1982, the City solicited proposals for the sale and redevelopment of the J. I. Case Building in downtown Fargo. At that time the property, which was owned by the City and leased to the Fargo School District, was producing no tax revenue. Case submitted a proposal to purchase the property and renovate it for use as an office complex. Case's proposal was accepted by the City and a written agreement was executed on June 6, 1983. Case agreed to pay $100,000 for the property; agreed to place $50,000 in escrow to be used by the City for riverfront development adjacent to the property; agreed to waive the three-year tax exemption permitted by Chapters 40–57.1 and 57–02.2, N.D. C.C.; and agreed to develop the property as an office complex having a minimum value for tax purposes of $1,500,000, with construction to be completed by January 1, 1985. In the event of breach by Case after it had taken possession of the property, the agreement provided that the City could, at its option, either 1) take the property back and return all money paid by Case, or 2) allow Case to retain the property, with the City authorized to recover an additional $100,000 as liquidated damages and keep the $150,000 previously paid by Case. The contract provided that Case would be in default if it declared its intention to abandon the project.

Although the agreement required Case to begin construction by October 1, 1983, delays occurred. On November 14, 1983, the parties executed a supplemental agreement which extended the date for commencement of construction to January 1, 1984. On November 23, 1983, Case informed the City by letter that one of the major proposed tenants had decided not to relocate to the Case Building, and that therefore "it is not currently feasible to develop this building as an office complex." The letter also expressed Case's desire to develop the property as a minimum-care elderly housing complex. Case subsequently sought the City's permission to assign its interest in the property to another corporation for development as an elderly housing complex. The City declined to con-

sent to the assignment and declared Case to be in default of the June 6, 1983, agreement.

The City commenced this action on January 6, 1984, seeking $100,000 in liquidated damages pursuant to the parties' agreement. The trial court found that Case had declared its intention to abandon the project, constituting a breach of its contract with the City. The court concluded that the $100,000 damages clause was an enforceable liquidated damages provision, not an invalid penalty, and judgment was entered for the City in that amount, plus costs and interest.

Case appeals, alleging that the contract provision requiring payment of $100,000 upon breach is an unenforceable penalty clause pursuant to Section 9–08–04, N.D. C.C.:

> "9–08–04. Fixing damages for breach void—Exception.—Every contract by which the amount of damages to be paid, or other compensation to be made, for a breach of an obligation is determined in anticipation thereof is to that extent void, except that the parties may agree therein upon an amount presumed to be the damage sustained by a breach in cases where it would be impracticable or extremely difficult to fix the actual damage."

■ A party seeking to enforce a contract provision which stipulates the amount of damages recoverable upon breach bears the burden of proving that the clause is valid as an exception to the general prohibition of Section 9–08–04. *Bowbells Public School District No. 14 v. Walker*, 231 N.W.2d 173, 178 (N.D. 1975). In a series of cases decided by this court, three "foundational facts" have emerged as critical to the inquiry whether a particular provision is a valid liquidated damages clause or a void penalty: 1) Were the damages upon breach very difficult to estimate at the time the contract was entered?; 2) Was there a reasonable endeavor by the parties to fix compensation?; and, 3) Does the amount stipu-

lated bear a reasonable relationship to the damages reasonably to be anticipated upon breach? *See Eddy v. Lee*, 312 N.W.2d 326, 330 (N.D.1981); *Bowbells Public School District, supra*, 231 N.W.2d at 176; *Hofer v. W.M. Scott Livestock Co.*, 201 N.W.2d 410, 411 Syllabus ¶ 2 (N.D.1972). These determinations are questions of fact to be resolved by the finder of fact. *Eddy v. Lee, supra*, 312 N.W.2d at 331.

■ The trial court specifically found that the damages which would be sustained by the City in the event of breach could not be readily determined at the time the contract was executed, that the parties made a reasonable effort to estimate damages caused by such a breach, and that the $100,000 amount was reasonable. The trial court's findings of fact will be overturned on appeal only if they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.[1] A finding of fact is clearly erroneous when, although there may be evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Wastvedt v. State*, 371 N.W.2d 330, 334 (N.D.1985).

We first consider the trial court's finding that the damages which might result from a breach of the contract were not easily ascertainable at the time the parties executed the contract. Case contends that damages would have been readily ascertainable, and that the clause therefore is not a valid attempt to liquidate damages.

The monetary damages suffered by the City by Case's breach of the contract result from the loss of tax revenues which would have been generated had the project been completed as agreed. The trial court noted that it was difficult to approximate the duration of this loss, and that, when viewed through the eyes of the parties at the time of contracting, the projected loss might continue indefinitely.

We also note that the requirement that potential damages be difficult to ascertain

---

1. Although Case has not framed its arguments in the context of the "clearly erroneous" standard of Rule 52(a), we are required to employ that standard in considering Case's arguments on appeal.

is more liberally construed in cases involving public contracts. Noting that the question had been mentioned without resolution in *Hofer, supra,* the issue was discussed at length in *Bowbells Public School District, supra,* 231 N.W.2d at 176 (citations omitted):

"We are not unmindful of the fact that this is a public contract and that it is the public as a whole that suffers when such a contract is breached. In this respect, this case is not unlike those cases in which a governmental body liquidates the amount of damages it may recover for a delay in the performance of a public construction contract. Although the damages suffered by the governmental body itself may be readily ascertainable, the damages sustained by the public are not readily ascertainable, and, on such basis, liquidated-damages provisions are generally upheld, even in States having statutes similar to § 9–08–04, N.D.C.C. . . .

"The courts have recognized that the actual loss is suffered by the public for whose benefit such contracts are made and that because of the extreme difficulty in ascertaining this public loss, liquidated-damages provisions in those cases are properly enforced."

The court concluded in *Bowbells* that a clause which stipulated damages for breach of a teacher's employment contract was enforceable, even though the actual cost of replacing the teacher would have been readily ascertainable, because there are other intangible damages suffered by the public at large when a teacher breaches an employment contract.

The appropriateness of liquidated damages in public contracts has been recognized by the United States Supreme Court in *Priebe & Sons, Inc. v. United States,* 332 U.S. 407, 411–412, 68 S.Ct. 123, 126, 92 L.Ed. 32, 38 (1947) (citations omitted):

"Today the law does not look with disfavor upon 'liquidated damages' provi-

sions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced.... They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts."

*See also Rex Trailer Co. v. United States,* 350 U.S. 148, 153, 76 S.Ct. 219, 222, 100 L.Ed. 149, 155 (1956). Courts in other jurisdictions have also relied upon the difficulty of estimating damages suffered by the general public to support enforcement of liquidated damage provisions in public contracts. *See, e.g., Melwood Construction Corp. v. State,* 126 Misc.2d 156, 481 N.Y. S.2d 289 (Ct.Cl.1984), *aff'd,* 119 A.D.2d 734, 501 N.Y.S.2d 604 (1986); *Dave Gustafson & Co. v. State,* 83 S.D. 160, 156 N.W.2d 185 (1968).

The trial court determined that Case's breach of the contract had created intangible damages to the public because of its negative effect on further redevelopment of downtown Fargo. The trial court also found that the monetary loss caused by the unavailability of the property on the tax rolls was impossible to determine with certainty at the time the parties entered into the contract. We conclude that the trial court's findings on this issue are not clearly erroneous.

Case next contends that the liquidated damages clause was not the result of a reasonable endeavor by the parties to fix compensation for breach. Case alleges that the parties did not discuss or negotiate the amount of the liquidated damages clause and that the amount was set unilaterally by the City based upon the difference between the contract purchase price ($150,000)[2] and the amount the City was willing to accept for the property without a redevelopment agreement ($250,000).

We have previously noted that § 9–08–04, N.D.C.C., is derived from Cal.Civ.Code

---

**2.** Although $50,000 of this amount was deposited in an escrow account designated for riverfront development, for the sake of clarity we

will refer to the entire $150,000 as the purchase price.

§§ 1670 and 1671,[3] and that we will give particular significance to California case law interpreting these statutes. *Eddy v. Lee, supra*, 312 N.W.2d at 328. We further noted that California also requires a showing that the amount stated as liquidated damages results from a reasonable endeavor by the parties to approximate damages. *Eddy v. Lee, supra*, 312 N.W.2d at 329 (quoting *United States Savings and Loan Association of California v. Reeder Development Corp.*, 57 Cal.App.3d 282, 129 Cal.Rptr. 113, 123 (1976)).

California has liberally construed its "reasonable endeavor" requirement and does not require face-to-face negotiations of the amount of the liquidated damages clause as a prerequisite to enforcing the clause. For example, in *Better Food Markets, Inc. v. American District Telegraph Co.*, 40 Cal.2d 179, 253 P.2d 10 (1953), the Supreme Court of California held that a liquidated damages clause printed in a form contract was enforceable. The court held that the "reasonable endeavor" requirement was satisfied by evidence that "the parties agreed to the liquidated provisions, and there is no evidence that they were not fully aware of circumstances making it desirable that liquidated damages be provided for." *Better Food Markets, supra*, 253 P.2d at 15.

In *Zurich Insurance Co. v. Kings Industries, Inc.*, 255 Cal.App.2d 919, 63 Cal. Rptr. 585 (1967), the Court of Appeal followed *Better Food Markets* to uphold a similar liquidated damages provision. The president of one party to the contract testified that he never read the entire agreement before signing it and that the liquidated damages clause was not pointed out to him or discussed at any time. The court nevertheless held that the "reasonable endeavor" requirement had been satisfied:

"Sidney Goldman, as president of at least one corporation engaged in commercial trade, must be presumed to have executed the agreement with knowledge that he was bound by its terms and it was incumbent upon him to review and acquire at least a working knowledge of the advantages and limitations of the contract. He cannot now be heard to refute its effect or to avoid the consequences by disclaiming knowledge where he had the opportunity to discuss and negotiate terms." *Zurich Insurance Co. v. Kings Industries, Inc.*, 255 Cal. App.2d 919, 63 Cal.Rptr. 585, 588–589 (1967).

In the instant case, the trial court found that the five partners of Case were "experienced businessmen who were knowledgeable about investments and development of

---

**3.** In 1977 California amended §§ 1670 and 1671, and consolidated them into a new § 1671:

"§ 1671. *Validity; standards for determination; applicability of section*

"(a) This section does not apply in any case where another statute expressly applicable to the contract prescribes the rules or standard for determining the validity of a provision in the contract liquidating the damages for the breach of the contract.

"(b) Except as provided in subdivision (c), a provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.

"(c) The validity of a liquidated damages provision shall be determined under subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either:

"(1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; or

"(2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support.

"(d) In the cases described in subdivision (c), a provision in a contract liquidating damages for the breach of the contract is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

California's amendment of these provisions comports with the modern trend toward upholding reasonable liquidated damages clauses in other than contracts of adhesion.

Although California has amended §§ 1670 and 1671, we nevertheless consider the California cases construing these earlier provisions persuasive in interpreting § 9–08–04, N.D.C.C.

real estate, and particularly, the type of development contemplated by the Case proposal to City." It further is undisputed, and the trial court found, that the City's initial draft of the contract was reviewed by Case, which examined it and returned it with suggested changes. These changes were incorporated and a second draft was forwarded to Case, which held the agreement, with a full opportunity to examine it, for several weeks before executing it on June 6, 1983.

■ Although Case contends that there must be evidence of actual negotiations or discussions by the parties regarding the amount designated as liquidated damages, this contention ignores commercial realities. We recognize that in the normal course of conducting business many agreements are signed without the parties fully negotiating each individual term of the contract. We can see no useful purpose to be served by invalidating a liquidated damages clause included in a contract negotiated by parties bargaining at arm's length where each party has equal opportunity to dictate the contract's terms. Under the circumstances of this case, where experienced parties had multiple opportunities to examine the contract, including the liquidated damages clause, and did in fact suggest changes which were incorporated into the parties' final agreement, we conclude that the evidence supports the trial court's finding that the liquidated damages clause was the result of a reasonable endeavor by the parties to fix compensation.

Case also contends that the parties made no attempt to approximate damages for breach, but based the amount of liquidated damages upon a wholly irrelevant factor— the difference between the contract price and the City's "unconditional sale" price. However, the difference between the contract price and the City's unconditional sale price was, in effect, an approximation of the damages which would have occurred upon breach. The City was willing to sell the property without a redevelopment agreement for $250,000. It agreed to accept $150,000 only if Case performed condi-

tions which would have placed a $1,500,000 property on the tax rolls and spurred further redevelopment in downtown Fargo. By accepting $100,000 less for the property with those conditions, the City had in effect placed an approximate present equivalent upon the projected tax collections and other intangible public benefits to be derived by redevelopment of the property in accordance with the parties' agreement. We conclude that the trial court's finding that the parties made a reasonable endeavor to fix compensation for breach is not clearly erroneous.

The third foundational inquiry is whether the damages stipulated bear a reasonable relationship to the anticipated actual damages upon breach. Case does not strenuously urge that the amount is unreasonable, and the evidence produced at trial regarding the tax loss to the City caused by Case's failure to complete the project supports the trial court's finding that the amount was reasonable. The trial court's finding on this issue is not clearly erroneous.

Case next contends that, even if the three "foundational facts" have been found, the clause must still be declared invalid as a penalty because it applied to a variety of breaches of varying degrees of importance. In *Raymond v. Edelbrock*, 15 N.D. 231, 236, 107 N.W. 194, 196 (1906), the court stated that "[w]here a contract stipulates for the performance of several acts and fixes the same amount of damages for the nonperformance of any single minor condition as is fixed for a total breach, regardless of the relative detriment apt to result from such partial breach as compared to the loss for a total breach, the very terms of the contract itself demonstrate that compensation for actual detriment was not the thought of the parties." The court in *Raymond* concluded that the agreement was not for compensation and was therefore void as a penalty. This rule was subsequently followed in *Mevorah v. Goodman*, 79 N.D. 443, 57 N.W.2d 600 (1953). However, in both *Raymond* and *Mevorah* the court was presented with a

partial breach of the contract at issue, and in each case the court hinted that the clause might be valid if applied to a total breach of the contract. *See Raymond v. Edelbrock, supra,* 15 N.D. at 236, 107 N.W. at 196 ("It follows that if the stipulation in question is to be upheld it must be construed to be applicable only to a total breach."); *Mevorah v. Goodman, supra,* 79 N.D. at 470, 57 N.W.2d at 617 ("The statute is not violated if Paragraph H is construed to provide liquidated damages ... only in breaches involving the contract as a whole....").

Several commentators suggest that liquidated damage provisions which apply to varying degrees of breach should be upheld if they are reasonable as to the actual breach which has occurred. For example, Professor Corbin states:

> "A case may, indeed, arise in which the amount specified in the contract is a reasonable forecast and estimate of the injury caused by the breach that has actually occurred, even though it would not be so in the case of other breaches that might have occurred. If the contract provision has this actual operation in the case before the court, and the extent of injury is difficult of estimation, there is nothing to prevent the enforcement of the express provision."

5 Corbin, Contracts § 1006, at 383–384 (1964). *See also* Dobbs, Law of Remedies § 12.5, at 823 (1973) ("A much sounder rule would enforce the liquidated damages clause if it was reasonably proportionate to expected losses on the very breach that did occur and that is sued upon, regardless whether it would have been unreasonable for some other breach that did not in fact come into issue."). Stated another way:

> "In the situation supposed, the defendant has admittedly agreed explicitly to pay the sum sued for in the event of the breach which has occurred, and admittedly the sum for is a reasonable one. The defendant should not be given the loophole of escape that, if he had committed

a different breach, the sum named would not have been reasonable."

Macneil, *Power of Contract and Agreed Remedies,* 47 Cornell L.Q. 495, 512 (1962) (quoting McCormick, Damages § 151, at 612 (1935)).

■ We agree with the reasoning of these authorities, and we conclude that the clause in the instant case may be enforced if it is reasonable as to a total breach and if a total breach has occurred. This result is not in derogation of the holdings in *Raymond, supra,* and *Mevorah, supra,* and in fact was foreshadowed by the above-quoted language from those opinions.

■ Case contends that the trial court's finding that Case totally breached the contract by declaring its intent to abandon the project is unsupported by the record.[4] We conclude that the course of events culminating in Case's November 23 letter [which stated that "it is not currently feasible to develop this building as an office complex" and "we recognize your disappointment in the fact that it is not currently feasible to develop this building as an office complex"] and subsequent attempts by Case to assign its interest in the property support the trial court's finding. Because Case totally breached the contract, and because we have upheld the trial court's finding that the stipulated sum is reasonably proportionate to the damages occasioned by such a breach, we conclude that the clause is enforceable as a valid liquidated damages provision.

The judgment of the district court is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

**4.** The contract specifically provided that declaration by Case of its intention to abandon the project constituted a default which would trigger the liquidated damages provision.